NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____

JOHN CROWLEY, as Receiver )
of Ambassador Insurance Company, )
)
        Plaintiff, )
)
)
        -- vs -- )
)
)
DORIS JUNE CHAIT, et al., )
)
        Defendants. )
_____ )

Hon. Harold A. Ackerman

CIV. NO. 85-2441 (HAA)


**OPINION AND ORDER**

**ACKERMAN, Senior District Judge:**

On December 16, 2005, this Court issued an Opinion and Order (the "12/16/05 Opinion and Order") that provisionally resolved several competing motions regarding the priority of claims to funds currently held in court deposit (the "Court Deposit"). Recognizing several outstanding issues and contemplating the need to modify its ruling further, the Court ordered the parties to provide supplemental briefing no later than January 6, 2006.

By letter dated December 21, 2005, Plaintiff John Crowley ("Plaintiff") provided the requested supplemental briefing. In the same letter, however, Plaintiff also sought reconsideration of that part of the 12/16/05 Opinion and Order pertaining to PricewaterhouseCoopers's ("PwC") asserted interest in the Court Deposit funds. Plaintiff characterized his request as being pursuant to Local Civil Rule 7.1(i), which governs motions for reconsideration. Although Plaintiff's request does not comply with the procedural requirements

1

for a formal motion for reconsideration, the Court nevertheless noted in an Order dated

December 29, 2005 that it would treat Plaintiff's request as a duly-filed motion for

reconsideration.  The Court further permitted opposition briefs to be filed no later than January 6,

2006.

On January 5, 2006, PwC filed a brief opposing Plaintiff's motion for reconsideration and

responding to the Court's request for additional briefing.  In its letter brief, PwC also sought

reconsideration of the Court's application of the "first in time, first in right principle."  On

January 4, 2006, Doris Chait moved for reconsideration of the 12/16/05 Opinion and Order and

further moved the Court to enforce a putative "settlement agreement" with Plaintiff.  Separately,

on January 6, 2006, Doris Chait responded to the Court's request for additional briefing.  This

Opinion and Order amends the 12/16/05 Opinion and Order in light of the additional information

provided.  Furthermore, Plaintiff's motion for reconsideration is GRANTED, PwC's motion for

reconsideration is DENIED, Doris Chait's motion for reconsideration is DENIED, and Doris

Chait's motion to enforce the "settlement agreement" is DENIED.


*Analysis*

**I.      Plaintiff's Motion for Reconsideration**

The Court first addresses Plaintiff's motion for reconsideration.  In the 12/16/05 Opinion

and Order, this Court wrote that "Plaintiff . . . has first priority to $2,493,750 from the Court

Deposit funds, and PwC is entitled to receive the balance of the Court Deposit funds [(the "Court

Deposit Balance")] by virtue of its right of contribution against the Estate of Arnold Chait for

60% of the judgment."  12/16/05 Opinion and Order 23-24.  Plaintiff is correct to note, however,

that PwC has not yet paid any part of the judgment.  Moreover, a right of contribution is

unenforceable until a co-defendant pays more than his or her pro rata share of the judgment.  *See*

*Sattelberger v. Telep*, 14 N.J. 353, 366, 102 A.2d 577, 583 (1954) ("[A] right of contribution

accrues only in favor of a joint tortfeasor who has paid, in whole or in part, a judgment recovered

against him for damages ensuing from the joint tortious conduct, for the excess so paid over his

pro rata share." (internal quotation marks omitted)); *Nora v. Livingston Twp.*, 171 N.J. Super.

579, 582, 410 A.2d 278, 280 (App. Div. 1980) ("There are two prerequisites to the right of

contribution among negligent parties: (1) common liability because of such negligence and (2)

the party claiming contribution paid more than its share of the common liability."); *Markey v.

Skog*, 129 N.J. Super. 192, 200, 322 A.2d 513, 517 (Law Div. 1974) ("[A] defendant's right to

contribution from a joint tortfeasor is . . . an inchoate right which does not ripen into a cause of

action until he has paid more than his pro rata portion of the judgment obtained against him by

the plaintiff.").

In his original motion for disbursement of funds, Plaintiff appeared to concede that

"Plaintiff is only entitled to 95% of the $2,625,000 settlement amount, which equals

$2,493,750."  (Pl.'s Reply in Supp. of Mot. for Disbursement of Court Funds & Opp'n to "Cross

Motions" of Defs. Doris Chait & Estate of Arnold Chait 21.)  Plaintiff's motion for

reconsideration, however, highlights for the first time his dispute with PwC regarding the Court

Deposit Balance.  Specifically, Plaintiff argues that he is also entitled to the Court Deposit

Balance "by virtue of having obtained a joint and several judgment against Arnold Chait's estate,

as Arnold Chait was also an insured under [Ambassador's director and officer liability] policy,

and the Plaintiff more than 20 years ago made a claim against that policy based on the liability of

Mr. Chait for the very loss found here by the jury." (Letter from Richard B. Whitney to Court 1-2 (Dec. 21, 2005).) While conceding that PwC possesses an inchoate claim to the Court Deposit Balance, Plaintiff contends that PwC's legal right to those funds does not accrue unless and until PwC pays "the entirety of the Judgment." (*Id.* 2.)

The Court finds that Plaintiff arguments are essentially correct. Whereas PwC will possess an enforceable right of contribution against the Estate of Arnold Chait if and when PwC pays more than its pro rata share of the judgment, Plaintiff now possesses a judgment against both PwC and the Estate of Arnold Chait for the full amount of the Judgment. Accordingly, Plaintiff has a presently enforceable claim on the Court Deposit Balance, whereas PwC's right of contribution remains inchoate. However, if Plaintiff collects the Court Deposit Balance by virtue of its judgment against the Estate of Arnold Chait, PwC must be afforded a credit in that same amount to avoid double recovery by Plaintiff. In other words, Plaintiff may not collect from PwC and the Estate of Arnold Chait, jointly, more than the total amount of the judgment: $182.9 million.

The Court does, however, take issue with one aspect of Plaintiff's argument. Plaintiff suggests that PwC's right of contribution becomes enforceable only when PwC pays "the entirety of the Judgment." (*Id.*) This is incorrect. A joint tortfeasor's right of contribution "becomes consummate and enforceable by action when a joint tortfeasor renders payment beyond his pro rata share on a judgment recovered against him for the common delict." *Sattelberger*, 14 N.J. at 366, 102 A.2d at 583. New Jersey's Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, provides in relevant part that when joint tortfeasors are held liable in a judgment, "and any one of the joint tortfeasors pays such judgment *in whole or in part*, he shall be entitled to recover

contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share."  N.J.S.A 2A:53A-3 (emphasis added); *see also Polidori v. Kordys, Puzio & Di Tomasso, AIA*, 217 N.J. Super. 424, 429, 526 A.2d 230, 232 (App. Div. 1987) (quoting the Joint Tortfeasors Contribution Law); *Miraglia v. Miraglia*, 106 N.J. Super. 266, 270, 255 A.2d 762, 764 (App. Div. 1969) ("The right of contribution accrues under the statute when the injured third person has brought action and recovers judgment against one or more of the joint tortfeasors and the latter has paid the judgment in whole or in part.").  Therefore, PwC's right of contribution will become enforceable if and when PwC pays more than its pro rata share of the judgment.  It is not necessary for PwC to pay the "entirety of the judgment" before seeking to enforce its right of contribution.  *See* Milton A. Dauber, *New Jersey Joint Tortfeasors Contribution Law*, 7 Rutgers L. Rev. 380, 383-4 (1952) (describing scenario in which right of contribution may become enforceable among joint tortfeasors before judgment has been paid in full).

PwC argues that it is entitled to receive a further credit for the monies that Plaintiff will receive as a result of the Tafro Settlement.  This argument also appears in PwC's Rule 59(e) motion to amend the judgment.  The Court will not address this argument here, but will address it in a separate Opinion.

## II.    PwC's Motion for Reconsideration

Following Plaintiff's example, PwC incorporated within its letter brief a request for the Court to reconsider one aspect of its 12/16/05 Opinion and Order.[1]  Specifically, PwC disagrees with the Court's application of the "first in time, first in right" equitable principle according

---

[1]  As with Plaintiff's request for reconsideration, the Court will treat PwC's request as a duly-filed motion for reconsideration.

5

Plaintiff's claim to the Court Deposit funds priority over that of PwC.

First, the Court notes that "PwC does not object in principle to the immediate disbursement of the Court Deposit, with appropriate judgment reduction." (Letter from Jay Kelly Wright to Court 3 (Jan. 4, 2006).) With respect to the Court Deposit Balance, which Plaintiff is entitled to recover by virtue of his judgment against the Estate of Arnold Chait, the Court has already found that PwC would be entitled to a dollar-for-dollar credit in the event it is called upon to satisfy the full amount of the judgment. Therefore, the Court perceives no dispute between Plaintiff and PwC regarding Plaintiff's immediate right to collect the Court Deposit Balance.

Second, PwC reiterates the argument, first raised in its Rule 59(e) motion to amend the judgment, that PwC is entitled to receive a judgment reduction equal in value to any monies that Plaintiff recovers pursuant to the terms of the Tafro Settlement. As noted above, the Court will address this argument in a separate Opinion and Order deciding the parties' respective motions to amend the judgment.

Finally, PwC urges the Court to abandon the equitable principle of "first in time, first in right" in favor of a "more flexible" approach that better takes into account "all the facts and circumstances . . . required to produce an equitable result." (*Id.* 5.) PwC suggests that the "first in time" principle is the "feeblest" of all equitable concerns and should be applied only when all other equities are equal. (*Id.* 4.) The Court assures PwC that application of the "first in time" principle accords squarely with the Court's perception of the overall equities in this case. Indeed, as between a prevailing plaintiff who has yet to collect any part of a judgment and a negligent defendant who has yet to pay any part of a judgment, the overall equities decidedly favor the

former.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Ultimately, however, PwC fails to present newly discovered evidence or show manifest error in the Court's exercise of its discretion. *See Great Am. Ins. Co. v. Spraycraft, Inc.*, 844 F. Supp. 1188, 1191 (S.D. Ohio 1994) (noting that interpleader actions afford district courts with "remedial flexibility" to achieve equity between parties). Therefore, because PwC raises no arguments that the Court has not already considered and rejected, the Court's application of the "first in time" principle will stand.

III.    **Doris Chait**

    A.    **Motion for Reconsideration**

Doris Chait has filed a motion for reconsideration of the Court's 12/16/05 Opinion and Order on six grounds. First, she argues that Judge Dearie's 1990 opinion was narrowly limited to determining whether the named insureds under Ambassador's Director and Officer Liability Policy (the "Policy") were entitled to receive contemporaneous reimbursement of their legal fees and costs. The Court has already considered and rejected this argument. (12/16/05 Opinion and Order 10-13.) Second, she contends that the Court overlooked her argument that priority "cannot be determined by filings on the same day minutes apart." (Br. of Former Def. Doris June Chait on Mot. for Recons. & to Enforce Settlement Agreement 2.) Although the Court did note the fact that Plaintiff and Doris Chait filed their respective motions for disbursement of the Court Deposit funds 80 minutes apart on the same day, the Court never relied on chronology in determining the priority of claims to the Court Deposit funds as between Plaintiff and Doris Chait. Third, Doris

7

Chait suggests that the Court erroneously accepted Plaintiff's "group liability" theory, whereby Doris Chait could not individually seek reimbursement of her legal fees and costs until all of the insureds had successfully resisted the claims against them.  The 12/16/05 Opinion and Order is clear, however, that the Court did not accept this theory, but rather, based its priority findings primarily upon principles of issue preclusion.

The final three grounds for reconsideration relate to the cross-motions challenging the propriety of the Tafro Settlement.  As her fourth ground for reconsideration, Doris Chait contends that the Court overlooked evidence tending to show that Plaintiff's non-recourse settlement with Richard Tafro was a sham and collusive.  In fact, the Court considered all such evidence, and Doris Chait fails to come forward with any newly discovered evidence that would warrant reconsideration.  *See Harsco Corp.*, 779 F.2d at 909.

Fifth, Doris Chait objects to the Court's remark that it deliberately delayed adjudication of the fund disbursement motions until after trial and suggests that this delay "deprived the Estate [of Arnold Chait] a chance to defend its interest at trial (by, e.g., appealing the decision)."  (Br. of Former Def. Doris June Chait on Mot. for Recons. & to Enforce Settlement Agreement 5.)  Well before trial, the Court was familiar with the Estate of Arnold Chait's asserted interest in the Court Deposit funds.  The Court firmly believes that the timing of its decision of the fund disbursement motions was prudentially sound and procedurally fair.

Finally, Doris Chait notes that the Court did not expressly rule on her request for a stay, in the event the Court decided against her various motions for disbursement of funds.  The Court allows that it did not specifically address this request in its 12/16/05 Opinion and Order, and hereby formally denies such request.

8

**B.      Motion to Enforce the Settlement Agreement**

Doris Chait also moves this Court to enforce a putative "settlement agreement" between herself and Plaintiff.  Her attorney, Mr. Robert E. Bartkus, relates to the Court a surprising episode that took place between counsel without the Court's knowledge.  At some time prior to December 6, 2005, Mr. Bartkus contacted Plaintiff's counsel with a proposal for settling the parties' competing claims to the Court Deposit funds.  Mr. Bartkus followed up his initial contact with an email to Plaintiff's counsel on December 6, 2005, inquiring of Plaintiff's position with regard to the proposal.

On December 19, 2005, Mr. Fordham Huffman, one of Plaintiff's attorneys, called Mr. Bartkus to propose a counteroffer.  Mr. Bartkus certifies that Mr. Huffman "proposed that Plaintiff and Mrs. Chait make a joint application to the Court by which Plaintiff would withdraw its objection to Mrs. Chait's motion for fees, but limited to the sum of $100,000 and Mrs. Chait would withdraw her objection to the motion regarding financial aspects of the Tafro Settlement." (Certif. of Robert E. Bartkus in Supp. of Mot. of [Former] Def. Doris June Chait ("Bartkus Certif.") ¶ 4.)  The attorneys apparently discussed the possibility of "jointly filing a motion asking the Court to disburse up to $100,000 to Mrs. Chait."  (Pl.'s Opp'n to Former Def. Doris June Chait's Mot. for Recons. & to Enforce Settlement Agreement 1.)  According to Plaintiff, the telephone conversation lasted five minutes and did not include any discussion of details, such as "what the joint motion would say, what backup would be sufficient to support Mrs. Chait's claim that $100,000 had been expended in her defense, what would happen in the event that PricewaterhouseCoopers objected to the disbursement, or even what would happen in the event the Court denied the joint motion."  (*Id.*)  Plaintiff contends that Mr. Bartkus "expressed doubt

9

regarding the acceptability of the proposal, but represented that he would take the proposal to his client and then respond." (*Id.* 2.)

Afer his conversation with Mr. Huffman, Mr. Bartkus and his co-counsel, Mr. Donald Kravet, attempted to contact Doris Chait's Florida counsel, Mr. Thornton Henry. Mr. Henry was unavailable, and Mr. Bartkus and Mr. Kravet left a message for Mr. Henry to return their call.

The Clerk's Office did not enter the 12/16/05 Opinion and Order onto the Docket until December 19, 2005. Accordingly, at some time after he attempted to contact Mr. Henry on December 19, Mr. Bartkus received an electronic notification of the Court's 12/16/05 Opinion and Order. Within minutes, Mr. Bartkus sent an email to Mr. Huffman stating, in full, "We agree to your counterproposal / Bob." (Bartkus Certif., Ex. B at 3.) Mr. Bartkus now asks the Court to enforce the "settlement agreement" between his client and Plaintiff.

Plaintiff objects to Doris Chait's motion on the ground that the attorneys understood that "a necessary condition" of the proposed agreement was that the parties' respective motions for disbursement of funds remained pending. (Pl.'s Opp'n to Former Def. Doris June Chait's Mot. for Recons. & to Enforce Settlement Agreement 2.) After this Court issued its 12/16/05 Opinion and Order, Plaintiff contends, the proposal was no longer open. Plaintiff also contends that Mr. Bartkus's purported acceptance was made without authority, and that Plaintiff's proposal was "so indefinite and ill-defined that it could not form the basis of a contract." (*Id.* 3.)

The Court finds that the parties have no enforceable settlement agreement. There is no dispute that the proposal as discussed on December 19, 2005 contemplated that Plaintiff and Doris Chait would file a joint motion for disbursement of up to $100,000 to Doris Chait, and that Doris Chait would withdraw her opposition to Plaintiff receiving the remaining Court Deposit

funds.  Such actions, however, would have no legal consequence if the Court had already decided

the parties' respective motions for disbursement of funds.  Therefore, the Court finds that the

attorney's discussions regarding settlement were implicitly premised upon the assumption that

the Court had not yet decided the then-pending motions.  When this assumption proved false,

Plaintiff's counteroffer, such as it was, was withdrawn.  *Cf. Wallace v. Summerhill Nursing*

*Home*, 380 N.J. Super. 507, 509-10, 883 A.2d 384, 386 (App. Div. 2005) (reversing trial court

for refusing to set aside a settlement agreement that was based on mutual mistake of fact).

## IV.     Amendment of 12/16/05 Opinion and Order

The Court now turns to two remaining issues: allocation of interest that has accrued on

the Court Deposit funds and payment of retention amounts under the Policy.  In light of the

supplemental briefing provided by the parties, the Court is satisfied that the insureds' retention

amounts under the Policy do not present a concern in distributing the Court Deposit funds.

Therefore, the Court must determine the proper allocation of interest.

The Court has determined that Plaintiff is entitled to receive $2,493,750 by virtue of the

Tafro Settlement, as well as the remainder of the principal in partial satisfaction of the judgment

against the Estate of Arnold Chait.  On September 14, 2004, Plaintiff dismissed Richard Tafro

from this case.  Previously, Mr. Tafro had agreed to pay Plaintiff the sum of $2,625,000 and

assign his (Mr. Tafro's) interest in the Court Deposit funds in consideration for Plaintiff

dismissing Mr. Tafro from this case.  Therefore, Plaintiff's right to seek disbursement of the

Court Deposit funds by virtue of the Tafro Settlement accrued on September 14, 2004.[2]  The

---

[2]  Richard Tafro's interest in the Court Deposit funds, which interest Mr. Tafro assigned to Plaintiff, also became enforceable on September 14, 2004.  Before that date, Mr. Tafro had not incurred an insurable loss in disposing of a claim.

11

Court will measure the accrual of interest on the $2,493,750 settlement amount from September 14, 2004. *See Kamens v. Fortugno*, 108 N.J. Super. 544, 549, 262 A.2d 11, 13 (Ch. Div. 1970) (noting the rule that "[i]nterest is allowed where the damages are readily ascertainable"). All accrued interest prior to this date shall be added to the principal.

On September 14, 2004, the total funds held in the Court Deposit amounted to $2,621,404.36. Plaintiff is entitled to receive $2,493,750, which represents the $2,625,000 Tafro Settlement amount multiplied by the 95% limit of liability under the Policy. The $2,493,750 figure comprises 95.130306% of the total funds held in the Court Deposit on September 14, 2004. Therefore, Plaintiff is entitled to receive 95.130306% of the Court Deposit funds by virtue of the Tafro Settlement.

As the Court has already found, Plaintiff is also entitled to receive the Court Deposit Balance in partial satisfaction of the judgment against the Estate of Arnold Chait. That judgment was rendered on September 30, 2005. On that date, the Court Deposit contained a total of $2,676,121.98 in funds, of which 95.130306% corresponded to the Tafro Settlement and accrued interest thereon, and $130,318.95 comprised the Court Deposit Balance. Plaintiff is entitled to receive the Court Deposit balance, but PwC is entitled to receive a credit equal to the amount of the Court Deposit Balance and interest thereon, should PwC ultimately be called upon to satisfy the full amount of the judgment.

### Conclusion

The Court's Opinion and Order of December 16, 2005 (Docket No. 452) is hereby AMENDED pursuant to the terms of this Opinion and Order. Plaintiff's motion for

12

reconsideration is GRANTED, PwC's motion for reconsideration is DENIED, and Doris Chait's

motion for reconsideration and to enforce the settlement agreement is DENIED.  A separate

Order shall direct the disbursement of funds in accordance with Local Civil Rule 67.1.

Newark, New Jersey                                    s/ Harold A. Ackerman, U.S.D.J.
Dated: March 7, 2006

13