NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
)
PAULETTE J. THABAULT, as Receiver )
of Ambassador Insurance Company, )          Hon. Harold A. Ackerman
)
             Plaintiff, )          Civil Action No. 85-2441 (HAA)
)
    v. )          **<u>OPINION AND ORDER</u>**
)
DORIS JUNE CHAIT, et al., )
)
           Defendants. )
_____)

**<u>ACKERMAN</u>, Senior District Judge:**

      This matter comes before the Court on motions (Doc. Nos. 487, 488) filed by Plaintiff

Paulette J. Thabault, as Receiver of Ambassador Insurance Company ("Plaintiff" or the

"Receiver"), and Defendant PricewaterhouseCoopers LLP ("PwC") to review the Order of the

Clerk on Plaintiff's Bill of Costs and Disbursements.  For the following reasons, both motions

will be granted in part and denied in part.  The Court will modify the Clerk's award, and will tax

costs in favor of Plaintiff and against Defendants PwC and the Estate of Arnold Chait in the total

amount of **$404,833.24**.


## *Background*

      After more than twenty years of litigation that culminated in a nine-week trial, a jury

awarded Plaintiff $119.9 million in damages in July 2005 in this accounting malpractice case.

This Court subsequently granted prejudgment interest that has resulted in a final judgment of

1

more than $205 million in the Receiver's favor, and held that PwC was jointly and severally liable for the entire judgment.  PwC appealed to the United States Court of Appeals for the Third Circuit in April 2006.

One day after PwC filed its appeal, Plaintiff filed a Bill of Costs and Disbursements ("Bill of Costs") with the Clerk's Office.  Plaintiff qualifies as a "prevailing party" entitled to costs pursuant to Federal Rule of Civil Procedure 54(d)(1).  Plaintiff requested costs in the total amount of $507,838.51.  PwC filed objections to Plaintiff's Bill of Costs.  PwC asked the Clerk to disallow $436,978.23 of Plaintiff's requested costs, and to award only $70,860.28.  On August 29, 2007, the Clerk granted the Receiver costs in the amount of $253,044.99.  In his Order and supporting Opinion, the Clerk taxed costs against Defendants PwC and the Estate of Arnold Chait in the following amounts:

| Docket Fee | $60.00 |
|---|---|
| Daily Transcript Fee | $53,937.50 |
| Deposition Transcripts | $53,981.97 |
| Playback of Videotaped Depositions | $32,355.00 |
| Courtroom Equipment | $27,500.00 |
| Witness Fees | $15,048.66 |
| Photocopying Trial Exhibits | $28,270.22 |
| Demonstrative Exhibits | $41,891.64 |
| Total Taxable Costs | $253,044.99 |

*Crowley v. Chait*, No. 85-2441, Clerk's Op. at 16 (D.N.J. Aug. 29, 2007) ("Clerk's Op.").

In the instant motions, Plaintiff asks this Court to review and modify the Clerk's award. Plaintiff seeks to recover greater amounts in various categories, as well as costs completely

2

disallowed by the Clerk, for a total amount of $499,479.11.  On the same day that Plaintiff appealed the Clerk's costs determination, PwC filed its own "conditional" motion to review the Clerk's award.  In this motion, PwC agreed to accept the Clerk's award if the Third Circuit affirmed the underlying judgment.  However, if Plaintiff sought review of the costs award by this Court, PwC moved to reduce the Clerk's award by $183,954.36, yielding a total final award of $69,090.63.  Plaintiff indeed moved for a review of the costs award, so this Court must consider both parties' costs appeals.  Of the categories of costs listed in the table above, only two are not challenged in some respect by either party in these appeals: Docket Fee and Witness Fees.  PwC also moved to stay taxation of costs pending the resolution of the appeal of the underlying judgment by the Third Circuit.

Plaintiff and PwC filed their costs appeals in September 2007, just a few days before the Third Circuit heard oral argument on PwC's appeal of the underlying judgment.  Although this Court did not formally grant PwC's motion to stay, this Court reserved decision on the parties' costs appeals pending the outcome of the Third Circuit's review.  On September 9, 2008, the Third Circuit affirmed this Court's underlying judgment in all respects.  *Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008).  The Third Circuit subsequently denied PwC's petition for rehearing *en banc*.  The parties' costs motions are now ripe for consideration; PwC's motion to stay will be denied as moot.

### *Analysis*

## I.    Standards for Awarding Costs

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these

3

rules, or a court order provide otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." This Rule establishes a "strong presumption" that costs are to be awarded to the prevailing party. *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d. Cir. 2000). However, the prevailing party generally bears the evidentiary burden to show that a particular claimed cost is taxable. *See Garonzik v. Whitman Diner*, 910 F. Supp. 167, 172 (D.N.J. 1995) (declining to award costs for particular reproduction because "plaintiffs have not shown how a copy was reasonably necessary to the trial").

Recoverable costs are limited by statute. Section 1920 of Title 28 of the United States Code defines the costs a clerk or judge may tax:

(1)    Fees of the clerk and marshal;
(2)    Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3)    Fees and disbursements for printing and witnesses;
(4)    Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5)    Docket fees under section 1923 of this title;
(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) (holding that "§ 1920 defines the term 'costs' as used in Rule 54(d)"). Federal courts may not grant costs unless such costs are authorized by § 1920 or other statutes. *Crawford Fitting*, 482 U.S. at 445. Because § 1920 limits a prevailing party's recoverable costs, "those costs often fall well short of the party's actual litigation expenses," but an award of costs necessarily involves a "shift" of certain costs to the non-prevailing party. *In re Paoli*, 221 F.3d at 464. While § 1920 limits the types of taxable costs, courts may construe and interpret the provisions of § 1920 in

4

determining whether certain costs are allowed.  *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 138-39 (3d Cir. 1999) (interpreting § 1920 in accordance with Federal Rule of Civil Procedure 32 to allow taxation of costs for depositions used for summary judgment motion); *Garonzik*, 910 F. Supp. at 170 (interpreting § 1920 in conjunction with Rule 30(b)(2) to allow taxation of costs for videotaped depositions where such costs not explicitly authorized by § 1920); *see also Gaddis v. United States*, 381 F.3d 444, 455 (5th Cir. 2004) (en banc) ("We have clearly stated that *Crawford Fitting* 'limits judicial discretion with regard to the kind of expenses that may be recovered as costs; it does not, however, prevent courts from interpreting the meaning of the phrases used in § 1920.'" (quoting *W. Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1238 (5th Cir. 1988)); *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998); *Alflex Corp. v. Underwriters Lab.*, 914 F.2d 175, 177 (9th Cir. 1990).

Local Civil Rule 54.1(g) "'set[s] forth the general rules . . . to follow in taxing costs' under § 1920" in this District.  *Pharm. Res., Inc. v. Roxane Labs.*, No. 03-3357, 2008 WL 2951173, at *2 (D.N.J. Jul. 25, 2008) (quoting L. Civ. R. 54.1 cmt. 4).  Local Rule 54.1(g) begins by stating that "*[u]nless otherwise ordered by the Court*, the Clerk shall observe the following general rules in taxing costs." L. Civ. R. 54.1(g) (emphasis added).  Thus, the provisions of Local Rule 54.1(g) provide mandatory rules only for the Clerk; they do not expressly limit the Court's discretion pursuant to § 1920.  *See, e.g.*, *Datascope Corp. v SMEC, Inc.*, No. 81-3948, 1988 WL 98523, at *2 (D.N.J. Sept. 15, 1988).  Accordingly, the Third Circuit has held that where the Local Rule and § 1920 conflict, the Local Rule "must give way."  *In re Baby Food*, 166 F.3d at 139.  The Court will endeavor to adhere to the guidelines of the Local Rule where the

Local Rule grants discretionary authority sufficient for this Court to tax costs within the meaning of § 1920 as this Court interprets the statute. *Cf. Pharm. Res.*, 2008 WL 2951173, at *2 ("To the extent that L. Civ. R. 54(g)(7) conflicts with § 1920, the Local Rule must give way, however, there is no obvious conflict, because the discretionary authority conferred by Rule 54.1(g)(7) enables the court to comply with any statutory mandate." (quoting *In re Baby Food*, 166 F.3d at 139)). However, where the provisions of the Local Rule grant less authority than allowed by § 1920, this Court will exercise its discretion to tax costs consistent with the statute where appropriate.

In interpreting § 1920, "expenses regarded as ordinary litigation expenses may be held recoverable 'where essential to a large or complex case.'" *Ricoh Corp. v. Pitney Bowes, Inc.*, No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007) (quoting Lite, New Jersey Federal Practice Rules, cmt. 4 to Rule 54.1). In *Ricoh*, Chief Judge Brown cited cases involving complex class actions in which the court considered costs in the context of awarding reasonable attorney's fees. *Id.* (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 256-57 (D.N.J. 2005); *Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004)). In these and similar cases, courts have allowed costs where such costs were "reasonably incurred in connection with the prosecution of a large litigation," or where such costs were "incidental" or "essential to modern complex litigation." *Oh*, 225 F.R.D. at 154; *see also Varacallo*, 226 F.R.D. at 256; *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Thus, costs that might not be recoverable in an "ordinary" case may be deemed recoverable as "essential to a large, complex case" in the court's discretion. Lite, New Jersey Federal Practice Rules, cmt. 4 to Rule 54.1 at 202 (Gann

2008 ed.) (hereinafter "Lite N.J. Fed. Practice").  Such costs must still be authorized by § 1920 as

reasonably construed by the Court.  Based on this Court's long experience presiding over this

case, this Court easily concludes that this matter qualifies as a large and complex case.

A "dissatisfied party" may appeal the Clerk's costs award to the District Court.  Fed. R.

Civ. P. 54(d); L. Civ. R. 54.1(h).  This Court reviews the Clerk's taxation of costs de novo.  *In re*

*Paoli*, 221 F.3d at 453; *In re Baby Food*, 166 F.3d at 139.  "'The clerk of court's role in taxing

costs awards, while quasi-judicial, is essentially ministerial.  This fact . . . underscores why it is

important that district courts retain the discretion to assess independently the factual record,'

whether the record consists of new evidence or old."  *Pharm. Res.*, 2008 WL 2951173, at *1

(quoting *In re Paoli*, 221 F.3d at 453).  Pursuant to the relevant statutory provisions and rules,

the taxing of costs is reserved to this Court's sound discretion.  *See, e.g.*, *Janssen Pharm. N.V. v.*

*Mylan Pharms., Inc.*, Nos. 03-6185/6220, 2007 WL 925535, at *2 (D.N.J. Mar. 23, 2007);

*Pharm. Res.*, 2008 WL 2951173, at *2.

Because each party's objections to the Clerk's award overlap in some instances, this

Court will address both parties' objections together.  This Court has carefully reviewed the

parties' briefing on their respective costs appeals as well as the extensive briefing they submitted

to the Clerk.


## II.     Daily Trial Transcript

The Clerk taxed the full amount sought by Plaintiff for its share of daily trial transcript

costs: $53,937.50.  Section 1920(2) allows for recovery for fees of the court reporter "for all or

any part of the stenographic transcript necessarily obtained for use in the case."  Local Rule

54.1(g)(6) further specifies the circumstances under which trial transcript costs may be taxed by the Clerk:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. Mere acceptance by the Court of a submitted transcript does not constitute a request. Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

The Commentary to the Local Rules observes that the enumerated exceptions "are broad enough to cover essentially any situation where a transcript is actually used in or after a proceeding." Lite N.J. Fed. Practice, cmt. 4(d) to Rule 54.1 at 205.

In its Bill of Costs, Plaintiff relies on subsection (C) above, stating that the "trial transcripts are required for the record on appeal and were necessary for resolving the issues in this complex case." (Pl.'s Bill of Costs at 1 n.1.) The Clerk agreed, citing the length and complexity of this case and the trial, and noting that Plaintiff provided "detailed examples as to the use of the transcripts during and after trial." Clerk's Op. at 3.

This Court concurs with the Clerk's determination. As Plaintiff illustrates in its brief, the daily transcripts were used extensively at trial. For example, both parties used the daily transcripts to examine witnesses and refresh recollections. Both parties cited to the daily transcripts in written briefs in support of motions made during trial, and the Court relied on these transcripts in deciding these motions. In response to a question from the jury during its deliberations, a portion of a daily transcript was presented to the jury. Finally, the Third Circuit certainly needed transcripts for the record on appeal, and our Court of Appeals cited extensively

to that record in its opinion affirming this Court's judgment. *See, e.g.*, *Chait*, 541 F.3d at 519, 528, 529, 531.

PwC contends that costs for the transcripts should not be recoverable under the Local Rule as "required for the record on appeal" because the appellate record did not require *expedited, daily* transcripts. PwC claims that "[i]n paying its own share, PwC has already paid more than the cost of preparing a transcript after trial for purposes of appeal, which is the limit of the amount taxable under the Local Rule."[1] (PwC Br. at 6.) PwC misreads the Local Rule. Local Rule 54.1(g)(6) "only requires that the transcript be 'required for the record on appeal,' not necessarily ordered for that purpose." *Datascope*, 1988 WL 98523 at *2. Even if, as PwC contends, ordering a transcript solely for appeal purposes "would have been a fraction of the cost of the expedited daily transcript" (PwC Br. at 5), the transcript itself was still required for appeal. Local Rule 54.1(g)(6) allows for taxation of daily trial transcripts here, and the Clerk did not err.

This Court further finds that daily trial transcripts were necessarily obtained for use in this case due to the case's length and complexity. Under such circumstances, taxation of costs is appropriate pursuant to § 1920(2). *See, e.g.*, *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002). Costs for daily trial transcripts may be viewed as "ordinary litigation expenses" that are recoverable "'where essential to a large or complex case.'" *Ricoh*, 2007 WL 1852553, at *3 (quoting L. Civ. R. 54.1, cmt. 4). Plaintiff's daily trial transcript costs were "reasonably incurred in connection with the prosecution of a large litigation" and "essential to modern complex litigation." *Oh*, 225 F.R.D. at 154. The daily transcripts were obtained by

---

[1]PwC contended before the Clerk that the daily transcript costs were "approximately double" the standard charge for ordering a transcript for appeal. (Wright Clerk's Decl. ¶ at 2.)

Plaintiff not merely for the convenience of counsel, but were essential to the smooth functioning of the trial in this matter.

PwC criticizes Plaintiff for not seeking a ruling on the taxability of daily trial transcript costs in advance, as the language of the Local Rule "strongly suggests."  Lite N.J. Fed. Practice, cmt. 4(d) to Rule 54.1 at 205 (recommending this practice).  This Court does not see why Plaintiff's failure to seek an early ruling precludes it from recovery.  Seeking a ruling prior to trial certainly would have been advisable and preferable, as it would have saved the considerable resources expended by the parties, the Clerk, and this Court on this costs issue.  However, as the prevailing party, Plaintiff is entitled to the daily transcript costs under § 1920 regardless of whether it employed the wisest, most efficient means of pursuing those costs.

PwC further contends that the parties "agreed" to share the court reporters' expenses during the trial, and therefore it should not be taxed with Plaintiff's share now.  PwC misconstrues the nature of the parties' "agreement."  While both parties requested daily transcripts during the trial, and made arrangements themselves with the court reporters for each party to pay half the costs for daily transcripts, there is no evidence that they reached any agreement as to the ultimate taxability of the reporters' costs.  This Court agrees with Plaintiff that "[s]etting up payment arrangements with the court reporter is a far cry from agreeing with PwC about what costs the prevailing party could recover."  (Pl.'s Opp. Br. at 6.)

For these reasons, this Court will uphold the Clerk's taxation of daily transcript costs in the total amount of **$53,937.50**.

III.    **Taking and Transcribing of Depositions**

In Plaintiff's Bill of Costs, the Receiver sought to recover $222,253.39 for the complete

cost of transcripts and videotapes for approximately 135 depositions taken in this matter.  Local

Rule 54.1(g)(7) provides that the Clerk "shall allow all or part of the fees and charges incurred in

the taking and transcribing of depositions used at trial under Fed. R. Civ. P. 32."  PwC objected,

asserting that Plaintiff failed to meet its burden to explain how each of these depositions were

"used at trial."  Of these 135 depositions, PwC contended that only 14 were "used at trial" in

whole or in part.  Specifically, according to PwC, Plaintiff used 10 depositions at trial by either

having the transcript read to the jury or having the videotaped deposition played to the jury.

Plaintiff used portions of the transcripts of four additional depositions in cross-examination.

Thus, PwC urged the Clerk to award costs only for these 14 depositions, in a total amount of

$55,751.62.

The Clerk agreed with PwC.  The Clerk noted that Plaintiff failed to describe how each

deposition was used at trial, and awarded costs only for the 14 depositions identified by PwC as

used at trial, in the total amount of $53,981.97.[2]  The Clerk disallowed costs for the other

depositions because "the Clerk cannot adequately determine which other discovery depositions

were used within the meaning of Rule 32."  Clerk's Op. at 10.  The Clerk stressed that with

regard to "discovery depositions" not used at trial within the strictures of Fed. R. Civ. P. 32, the

parties should have sought a court order on the taxability of such costs before trial, given the

complexity and magnitude of this case and the large number of depositions at issue.  Plaintiff

_____

[2]The Clerk did not explain the $1,769.65 discrepancy between the $55,751.62 award
conceded by PwC and the $53,981.97 award granted by the Clerk.

11

appeals this determination, asking for full recovery of all the deposition costs it seeks in its Bill of Costs:  $222,253.39.

This Court concludes that Plaintiff is entitled to costs for obtaining the transcripts and videotapes of all the depositions used in this case, not only the ones introduced at trial by way of reading, playing of the videotape, or use on cross-examination.  Section 1920(2) allows recovery for "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."  Local Rule 54.1(g)(7) specifies that only fees for deposition transcripts actually used at *trial* pursuant to Rule 32 may be awarded by the Clerk, but does not limit this Court's broader authority under § 1920 to award costs to the prevailing party for deposition transcripts necessarily obtained for use in the *case*.  *See In re Baby Food*, 166 F.3d at 139 (holding that where Local Rule and § 1920 conflict, the Local Rule "must give way").  The Local Rule allows for the taxation of costs for depositions not used at trial if "the Court otherwise orders."  L. Civ. R. 54.1(g)(7); *see Pharm. Res.*, 2008 WL 2951173, at *2.  In any event, the commentary to our Local Rules indicates that the "used at trial" requirement "encompasses all lawful uses of pretrial depositions in judicial proceedings at any stage of litigation," as long as the transcript was used in some way "to examine a witness at trial or in a hearing."  Lite N.J. Fed. Practice, cmt. 4(e) to Rule 54.1 at 206.  "[T]he taxing of deposition costs has become an accepted practice."  *Datascope*, 1988 WL 98523, at *3.

While this Court would have appreciated a more detailed rendition from Plaintiff of how it employed the depositions taken in connection with this case for which it seeks costs, the Court recognizes the difficulty in providing such precise identification of how each particular deposition was "used" in a 20-year, complex litigation.  As a court in this District has observed,

"[a]n attorney needs deposition transcripts to prepare for both direct and cross-examination even if the transcripts are not directly introduced into evidence during trial." *Hurley v. Atlantic City Police Dep't*, Nos. 93-260, 94-1122, 1996 WL 549298, at *5 (D.N.J. Sept. 17, 1996). Therefore, "[t]hat some of the depositions taken by plaintiff were not introduced into evidence at trial does not preclude a finding that the transcripts were 'used' at trial." *Id.* For the costs to be taxable, the depositions need not have been used at trial, and must only "'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" *Datascope*, 1988 WL 98523, at *3 (quoting *Raio v. Am. Airlines, Inc.*, 102 F.R.D. 608, 611 (E.D. Pa. 1984)). This Court finds that, in the context of this extremely complex, seemingly never-ending case, the depositions taken in connection with it for which the Receiver seeks costs were reasonably necessary at the time they were taken to prepare for trial, and were not excessive. Thus, the Receiver shall recover the costs for obtaining the transcripts and videotapes of these depositions.[3]

However, this Court will award costs only for those depositions taken in connection with *this* case, Civil No. 85-2441. PwC contends that of the 135 depositions listed in Plaintiff's Bill of Costs, a significant number were taken during the time when this case was consolidated for discovery purposes with other cases under the caption *In re Ambassador Group Litigation*, MDL No. 778, before a judge in the Eastern District of New York. This fact alone, of course, does not necessarily dictate that the transcripts and videotapes of these MDL-phase depositions were not necessarily obtained for use in *this* case. Yet PwC claims that PwC itself noticed some of these

---

[3]PwC accepts the Clerk's taxation of costs for videotapes of depositions, and does not draw any distinction between written transcripts and videotapes. Considering the length and breadth of this case, costs for videotaped versions of the depositions were reasonably necessary, especially in light of the fact that several videotaped depositions were ultimately played to the jury due to the unavailability of the witnesses.

depositions included in Plaintiff's Bill of Costs because the deponent was expected to have testimony relevant to *other* actions consolidated or coordinated with the MDL action, and not with this particular action filed by Plaintiff in this Court. Crucially, PwC presents persuasive evidence that Plaintiff represented to the MDL court and the Judicial Panel on Multidistrict Litigation ("JPML") that many of the depositions taken in MDL No. 778 have no relation to *this* New Jersey case. (*See* Wright Decl. at ¶ 3.)

First, the Receiver submitted a memorandum to the MDL court in 1995 urging that court to remand Civil No. 85-2441, this case, from the MDL to this Court in the District of New Jersey. At the time, according to the Receiver, the MDL for practical purposes included this case and an interpleader insurance action brought in the Eastern District of New York. In addition, two New York state court actions brought by the New York Superintendent of Insurance as liquidator/receiver of Horizon Insurance Company were coordinated for discovery purposes with the federal MDL No. 778. In its memorandum to the MDL court, the Receiver contended that "[f]or almost a year, [PwC] has been deposing regulatory and receivership witnesses of the New York Insurance Department – depositions that have virtually *nothing* to do with the [New Jersey] action." (Wright Decl. Tab A at 11 (emphasis in original).)

Later, in 1997, the Receiver's counsel submitted an affidavit to the JPML again urging remand of this action, Civil No. 85-2441, from the MDL court to this Court. In this affidavit, the Receiver asserted that of the approximately 45 depositions taken alone or jointly by the Receiver and the New York Superintendent of Insurance, "[a]t least 15 of these were taken by the New York plaintiff, of witnesses related only to the New York case." (Wright Decl. Tab B at ¶ 2.) In addition, the Receiver's counsel attested that Defendant took more than 50 depositions of

witnesses associated with the New York insurance agency plaintiff.  (*Id.*)  Because these depositions "largely focused" on claims regarding exacerbation of damages by New York regulators, the Receiver's counsel represented to the JPML that these New York witness depositions "would have virtually no relevance to the Vermont Receiver's action."  (*Id.*)

PwC asks this Court to disallow all deposition costs in excess of those granted by the Clerk, and does not explicitly argue in the alternative that this Court at least should deny costs for depositions of witnesses associated with the New York Superintendent of Insurance or the New York Insurance Department.  Instead, it appears to use this New York witnesses issue to suggest that *all* of Plaintiffs' deposition costs in excess of those taxed by the Clerk are unsupported and unrecoverable.  This Court will chart a middle course.  This Court disagrees with PwC that the cost of transcripts and videotapes of *all* of the depositions listed by Plaintiff beyond those explicitly introduced at trial should be denied.  Nonetheless, this Court agrees with PwC that transcription costs should not be granted for MDL-phase depositions that the Receiver itself has acknowledged have "virtually nothing to do" with the instant case and have "virtually no relevance" to this case.  Transcripts and videotapes of these depositions were not "necessarily obtained" merely because they were taken "at PwC's instance."  (Pl.'s Mem. at 4, 6.)  These depositions, by Plaintiff's own admission, simply were not "necessarily obtained for use" in this case.  28 U.S.C. § 1920(2).  Plaintiff's Bill of Costs and its submissions in connection with the instant appeals fail to provide any indication that these once-irrelevant depositions later became somehow necessary in this case.

Identifying the depositions of New York witnesses for which transcription costs should not be allowed presents a challenge.  Just as Plaintiff, in its Bill of Costs, simply lists deposition

costs by witness name without any reference to the witness's importance or the use of that witness's deposition, PwC simply provides the Court a list of the 45 witnesses it identifies as "associated" with the New York insurance agency without any further explanation. (Wright Decl. at ¶ 4.) Still, despite this lack of supporting detail to allow this Court to verify that all the witnesses listed by PwC are actually "New York witnesses," this Court will accept PwC counsel's sworn representation that these 45 witnesses are related to the New York insurance agency. PwC also fails to provide a total of the costs associated with these New York witnesses, thus leaving it to the Court to sift through Plaintiff's Bill of Costs to locate and deduct the costs associated with each of these witnesses. The Court has undertaken this laborious task. Based on PwC's list, as provided in counsel's declaration, and this Court's own careful review of Plaintiff's Bill of Costs, this Court will disallow transcription and videotape costs for the following depositions in the following amounts:

| | |
|---|---|
| Andrew Alberti | $1,715.70 |
| Martin Ballot | $624.00 |
| Raymond Belonsky | $439.50 |
| Lawrence Bentman | $320.50 |
| Eugene Bienskie | $561.70 |
| Francesa Bliss | $476.20 |
| Margaret Brunetti | $359.20 |
| Martin Carus | $624.70 |
| Germaine Colaneri | $368.20 |
| Florence Cornett | $1,034.70 |
| Susan Costa | $611.20 |
| Kenneth DeKoven | $749.20 |

16

| | |
|---|---|
| Anthony DiPaola | $1,952.50 |
| Robert DiRaffaele | $462.70 |
| Francis Donohue | $1,501.50 |
| Sonia Elisha | $183.70 |
| Arnold Fine | $570.70 |
| George Fosket | $395.20 |
| Robert Gaynor | $381.70 |
| Janet Glover | $372.70 |
| Jerome Gould[4] | $70.00 |
| Stanley Heineman | $408.70 |
| Bertram Horowitz | $487.00 |
| Edward Jacobs | $1,625.10 |
| William Jerome | $1,044.25 |
| Richard Karpin | $903.80 |
| Henry Lauer | $686.00 |
| Vincent Laurenzano | $302.50 |
| Paul Leahy | $482.50 |
| Teresa Murray | $243.00 |
| Gasper Musso | $707.00 |
| Nicholas Puleio | $1,200.00 |
| John Reierson | $442.00 |
| Matthew Saunders | $426.70 |
| Gerald Scattaglia | $543.70 |
| Nicholas Siletti | costs included in costs for Kenneth DeKoven |
| John Tafuro | $287.72 |

[4]PwC's list incorrectly identifies this witness as "George Gould."

| Richard Townsley | $293.50 |
| Louis Trager | $336.70 |
| Patricia Tucker | $179.20 |
| Joseph Tycon | $244.00 |
| Samuel Wachtel | $536.70 |
| Mary Ward | $1,145.00 |
| George Wetzel | $657.20 |
| Henry Wintjen | $947.90 |
| **TOTAL** | **$27,905.67** |

Finally, PwC lists 17 depositions that it claims Plaintiff's counsel did not even attend. Fourteen of these depositions are of the New York witnesses listed above, the remaining three are not. (Wright Decl. ¶ 5.) The Court will not deny taxation of costs for these three latter depositions simply because Plaintiff's counsel did not attend them. The costs Plaintiff seeks in this regard result from Plaintiff's payment for the transcripts and videotapes of these depositions, and not its attorneys' fees for actually attending these depositions. While suggestive, the fact that counsel failed to appear at these depositions does not automatically demonstrate that the transcripts and videotapes of these depositions were not necessarily obtained for use in this case. This Court acknowledges that Plaintiff, not PwC, generally bears the burden to show that particular costs should be taxed. *See generally Garonzik*, 910 F. Supp. at 172; *Bolltier v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 735 F. Supp. 623, 629 (D.N.J. 1989). However, in light of the presumption in favor of awarding of costs, *see In re Paoli*, 221 F.3d at 462, this Court will not disallow costs for these three depositions based solely on the thin reed advanced by PwC.

18

To summarize, this Court has "broad discretion to tax the costs of depositions under 28 U.S.C. § 1920," *Hurley*, 1996 WL 549298, at *5. This Court will exercise its discretion to tax costs for all depositions used by Plaintiff in this case, even if not expressly used at trial, except for those that Plaintiff itself has admitted were virtually irrelevant to this action. Plaintiff seeks costs for 135 depositions, totaling $222,253.39. The Clerk taxed costs for 14 depositions, totaling $53,981.97. This Court will tax costs for 76 additional depositions, in the amount of $140,365.75. This Court will deny transcription and videotape costs for the 45 depositions identified by PwC as involving witnesses associated with the New York insurance agency. These disallowed costs total $27,905.67. Thus, the Court will tax costs in the total amount of **$194,347.72** for the transcription and videotape costs of 90 depositions.


## IV.     Multimedia Equipment

Plaintiff's Bill of Costs seeks recovery for the cost of Plaintiff's rental of multimedia equipment used throughout the trial in this case. Plaintiff seeks $55,100.00; the Clerk granted Plaintiff one-half of its costs.[5]  Both parties challenge the Clerk's decision. Plaintiff objects to the taxation of only one-half of its claimed costs, and asks this Court to award the full amount, while PwC urges that this Court deny *all* costs for rental of the equipment. This equipment, according to the Receiver, was necessary "for displaying the videotaped deposition testimony to the jury and for displaying exhibits and demonstratives to the jury." (Pl.'s Bill of Costs at 32

---

[5]The Clerk made a small mathematical error in granting this award. Plaintiff requested $55,100.00 from the Clerk; half of $55,100 is $27,550. The Clerk concluded that Plaintiff should receive "one-half of the requested amount," Clerk Op. at 11, but awarded only $27,500. Thus, the Clerk's error resulted in an award $50 less than the Clerk presumably intended.

n.8.)

The Clerk found the equipment necessary and the expense reasonable "given the quantity of documents that were introduced at trial," and also because of the number of videotaped depositions played to the jury.  Clerk's Op. at 10.  Thus, the Clerk found that an award of costs was appropriate as "[f]ees for exemplification . . . necessarily obtained for use in the case" pursuant to 28 U.S.C. § 1920(4).  In opposing any award for the multimedia equipment costs, PwC relies on Local Rule 54.1(g)(10), which provides that the expenses for preparing visual aids may be taxed when "such visual aids are admitted into evidence."  PwC notes that Plaintiff used the equipment in part to display demonstratives and other visual aids not admitted into evidence at trial, and that because Plaintiff failed to specify the exact amount of time that the equipment was used at trial to display *admitted* evidence, the multimedia equipment costs should not be taxed.  The Clerk rejected this argument because Plaintiff paid for the equipment on a per-day basis rather than a per-use basis, so Plaintiff's representation that the equipment was used to display admitted exhibits and depositions throughout the trial was sufficient.

This Court agrees with the Clerk.  Section 1920(4) authorizes the taxation of these exemplification costs even though each and every exhibit displayed with the aid of the multimedia equipment was not admitted into evidence.  The exemplification provided by the equipment need only have been "necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The equipment was used to display admitted evidence and videotaped depositions as well as demonstrative aids.  This Court presided over the trial in this matter and concludes that the multimedia presentation enabled by the equipment was reasonably necessary for Plaintiff to present its case and to aid the jury in their consideration of this complex case.  The rental costs

20

are ordinary litigation expenses reasonably incurred in the prosecution of this massive, complex litigation, and were not merely for counsel's convenience. *See Ricoh*, 2007 WL 1852553, at *3; *Oh*, 225 F.R.D. at 154.

After finding multimedia equipment costs taxable, the Clerk determined that Plaintiff should be awarded just one-half the cost, reasoning that "had this issue been properly raised before Judge Ackerman during the pretrial stages of this litigation or during the trial the Judge would have directed the parties to share the cost of this equipment rental." Clerk's Op. at 11. In making this post-hoc prediction, the Clerk appears to have accepted PwC's argument, which was based on this Court's resolution of Plaintiff's pretrial motion to allow multimedia presentation at trial and which PwC renews in its instant motion. PwC observes that in Plaintiff's pretrial motion, Plaintiff stated that it had "sought, but not obtained, agreement of the other parties for sharing the cost." (PwC Obj. to Pl.'s Bill of Costs at 8.) PwC construes Plaintiff's pretrial motion as asking for permission to use its own chosen multimedia equipment *at Plaintiff's own expense*. Because this Court did not expressly address the cost of the equipment in its Order granting Plaintiff's motion (Doc. No. 270), PwC contends that the Court, by its silence, effectively ordered that the parties share the cost of this equipment. According to PwC, as asserted by PwC's counsel in a Declaration filed with the Clerk, this Court "did not allow one party to force other parties to bear expenses." (Wright Clerk Decl. at ¶ 4.) The Clerk's resolution of this issue suggests that the Clerk similarly read the Court's silence on costs in its Order as indicating that the Court would have ordered that the parties share the costs.

The Court did not address costs in its Order on multimedia equipment because the issue was not presented at that time. All Plaintiff stated in its pretrial motion is that Plaintiff attempted

21

to reach an agreement with PwC to share costs, but no such agreement had been reached.  This Court does not make rulings by silence or implication.   Furthermore, while this Court might not have "forced" one party to bear costs prior to trial, this Court's pretrial ruling has no relevance to whether the costs are properly taxable in favor of the prevailing party post-trial.  This Court agrees with Plaintiff that "[a] bill of costs is not about what the parties agreed to – it is a mechanism for shifting certain costs to the losing party."  (Pl.'s Br. at 8.)  While not *all* actual litigation expenses are recoverable, certain costs may properly be shifted to the non-prevailing party.  *In re Paoli*, 221 F.3d at 464.  The parties' failure to reach a cost-sharing agreement prior to trial – or to reach agreement even on using the same equipment – does not defeat Plaintiff's entitlement to costs properly taxable at this stage.  This Court sees no reason why Plaintiff should not recover the full cost of the rental of this equipment.  This Court will tax costs in the amount of **$55,100.00** for the rental of multimedia equipment.

## V.      Digitization and Synchronization in Connection with Videotaped Depositions

For the same reasons that the Clerk granted only one-half of the cost of multimedia equipment rental, the Clerk also taxed only one-half of the cost sought by Plaintiff for preparation and playback of videotaped depositions at trial.  These costs include the cost of "digitization" of the videotapes and "synchronization" of the digital form with the transcript to allow "controlled playback" to the jury.  (Pl.'s Br. at 9.)  Plaintiff sought recovery of $64,710.00 for these services: $55,705.00 for synchronization, $1,975.00 for digitization, and $7,030 for "Video Sync – Clip Creation."  (Pl.'s Bill of Costs at 32.)  According to Plaintiff, all of these costs were incurred "in preparing deposition videotapes for certain witnesses to be played at

trial." (Pl.'s Br. at 9.)  The Clerk awarded half of the total costs sought: $32,355.00.  Just as with the costs for multimedia equipment rental, both parties object to the Clerk's award.  Plaintiff seeks full recovery of all of its preparation and playback costs, while PwC asks this Court to deny any award for these costs.

This Court finds that for videotaped depositions presented to the jury at trial, these costs were reasonable and qualify as fees for exemplification necessarily obtained for use in the case. 28 U.S.C. § 1920(4).  These "high-tech" processes were reasonably necessary for Plaintiff to present videotaped depositions to the jury in this complex case, and were not merely for counsel's convenience.  However, not all of Plaintiff's claimed costs arose from depositions presented to the jury via digitized, synchronized videotape.  While Plaintiff categorized its digitization and synchronization costs under the heading "Preparation and Playback of Videotaped Depositions at Trial," (Pl.'s Bill of Costs at 32) its filing demonstrates that not all of the claimed costs resulted from such preparation and playback.

In a footnote to a tab in Plaintiff's Bill of Costs, Plaintiff explains that "[s]ynchronization allowed the Plaintiff to retrieve and display specific portions of a transcript simultaneously with corresponding video.  This tool was necessary for *trial preparation, including cross-examination and redirect examination preparedness*, and it was essential to the presentation of the testimony of John Murad (5/13/05), Arnold Chait (5/13/05), Ronald Koch (5/19/05), and Howard Sulzman (5/23/05)."  (Pl.'s Bill of Costs, Tab 4 at 1 n.2 (emphasis added).)  PwC contends Plaintiff should not recover for synchronization of videotaped depositions for witnesses that actually testified live and in-person at trial.  Because Plaintiff's Bill of Costs does not distinguish between costs for synchronization for witnesses presented by videotape and for preparation for live witnesses, PwC

23

urges this Court to deny all costs for this service.  As PwC artfully puts it, "[a]lthough some needle of justifiable cost may be buried in the haystack of the amount claimed, the only thing clear is that Plaintiff's request was inflated by an indeterminate amount.  The fact that the Clerk taxed only one-half of that amount mitigates the error, but does not undo it."  (PwC Br. at 11.)

This Court shares PwC's concern.  As discussed above, this Court will grant costs for both written transcripts and videotapes of all depositions relevant to this case, and also finds that costs for digital preparation of videotaped depositions presented at trial should be taxed.  But this Court must draw the line at high-tech *preparation* of videotaped depositions of witnesses who testified live and in-person at trial.  This Court cannot consider this service for such witnesses *necessary* for trial preparation or for use in this case.  For live witnesses who had previously given a deposition, Plaintiff necessarily procured a copy of the transcript and a videotape of the deposition, and this Court will award Plaintiff its costs in obtaining these records, even if the deposition was not introduced or otherwise referenced at trial. Synchronization purely for the sake of easier trial preparation, in this Court's view, is neither merely incidental to the cost of the videotaped deposition itself nor an ordinary litigation expense in complex litigation.  Rather, these services were a convenience to counsel, if not an unnecessary "extravagance," that should not be taxed.  *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 428-29 (7th Cir. 2000) (holding that, in "evaluating the necessity of a particular type of exemplification," courts should consider whether the "exemplification [was] vital to the presentation of the information, or was it merely a convenience or, worse, an extravagance").

Because synchronization was not reasonably necessary for use in this case for live witnesses, § 1920 does not allow recovery for these costs.  The same reasoning applies to

digitization and clip creation. Plaintiff's Bill of Costs states that digitization is a "component of the overall synchronization process" by which "VHS tapes of witness' depositions were initially digitized to prepare for their playback alongside specific portions of deposition transcript." (Pl.'s Bill of Costs, Tab 4 at 2 n.3.) Plaintiff further explains that "[c]lip creation allowed certain portions of depositions to be played absent presentation of the entire deposition." (*Id.* at 2 n.4.) Neither of these services was reasonably necessary for witnesses who testified in-person at the trial, rather than through videotaped deposition.[6]

If possible, this Court would simply deduct the costs for synchronization of live witnesses' depositions from Plaintiff's requested costs. However, as PwC stresses, Plaintiff's Bill of Costs fails to differentiate these technology costs by witness, but only distinguishes by date of service.[7] Even in its response to PwC's appeal, Plaintiff fails to address PwC's argument in this regard in any meaningful way; it does not mention any distinction between costs for videotaped depositions presented at trial and those that were synchronized merely for trial preparation for live witnesses. Perhaps the billing methods employed by Plaintiff's vendor prevented Plaintiff from identifying the high-tech video services by witness; certainly the bills from the vendor attached to Plaintiff's Bill of Costs do not make any such delineation. No matter

---

[6]It could be argued that preparation of many videotapes for presentation at trial was necessary in this case because Plaintiff could not safely predict which witnesses in this long-lasting case would be available for trial. But Plaintiff only contends that the processing of the videotapes for witnesses who did not testify live was necessary for "trial preparation, including cross-examination and redirect examination preparedness." (Pl.'s Bill of Costs, Tab 4 at 1 n.2.) Based on this justification, the Court cannot grant all the costs Plaintiff seeks.

[7]The Clerk similarly observed that Plaintiff presented video deposition testimony for only five witnesses and that Plaintiff's Bill of Costs "does not identify how much of the $64,170.00 applies to those five deponents or any other witness." Clerk's Op. at 11.

the reason, this Court is faced with two unpleasant options: 1) deny *all* costs for this category, even though some of Plaintiff's claimed costs are clearly appropriate and recoverable; or 2) reduce Plaintiff's total claimed costs in this regard by some amount that, while ultimately based on this Court's discretion and experience with this case, may only be calculated with a degree of arbitrariness.

As much as the Court disfavors the latter approach, this Court will not deny *all* costs for Plaintiff's digitization and synchronization services. This Court possesses broad discretion to fashion a just award. Based on Plaintiff's statement that digitization and synchronization was essential to the presentation of only four videotaped depositions (Pl.'s Bill of Costs, Tab 4 at 1 n.2), this Court surmises that most of the claimed costs were *not* for processing of these four depositions. Plaintiff has not met its burden to show that it is entitled to *all* the costs it has claimed in this category. In an effort to craft a fair award that allows Plaintiff to recover its taxable costs but does not grant Plaintiff costs to which it is not entitled, this Court will grant Plaintiff one-quarter of its requested award for this category: **$16,177.50**. This Court determines in its discretion that this amount represents a fair, equitable award in light of all of the circumstances.

## VI.    Photocopying Costs from Outside Vendor

In its Bill of Costs, the Receiver requested reimbursement for photocopying expenses in the total amount of $36,629.62. These costs arose from two separate categories: 1) $8,359.40 in in-house copying fees; and 2) $28,270.22 in vendor-generated photocopies. The Clerk disallowed costs for in-house copying fees, and Plaintiff does not appeal this determination.

26

However, the Clerk allowed Plaintiff to recover the photocopying fees it paid to its outside trial

vendor in the full amount of $28,270.22.  PwC appeals, arguing that Plaintiff has failed to satisfy

the requirements of the Local Rule with regard to these costs.

In granting Plaintiff's outside vendor copying costs under this Rule, the Clerk "accept[ed]

Plaintiff's representation that, "[t]he outside vendor fees were incurred for copying trial exhibits

and deposition transcript designations, which were required by the Court's Final Pretrial Order

[Doc. No. 225]."  Clerk's Op. at 14 (quoting Pl.'s Clerk Reply Br. at 14).  Section 1920(4) allows

taxation of "[f]ees for exemplification and copies of papers necessarily obtained for use in the

case."  Local Rule 54.1(g)(9) further specifies:

> The fees for exemplification and copies of papers are taxable when
> (A) the documents are admitted into evidence or necessarily attached
> to a document required to be filed and served in support of a
> dispositive motion, and (B) they are in lieu of originals which are not
> introduced at the request of opposing counsel.  The cost of copies
> submitted in lieu of originals because of convenience to offering
> counsel or his or her client is not taxable.  The cost of copies obtained
> for counsel's own use is not taxable.

PwC contends that Plaintiff failed to make the required showing under both clauses (A) and (B)

of Local Rule 54.1(g)(9).  It asserts that Plaintiff neither explicitly claims that every photocopy

made was of documents admitted into evidence or filed with the Court, nor does Plaintiff show

that the copies were submitted or filed in lieu of originals not introduced at opposing counsel's

request.

This Court rejects PwC's argument.  This Court's Final Pretrial Order required counsel to

copy trial exhibits and deposition designations and serve them upon the Court and opposing

counsel.  Thus, the costs are taxable under the Local Rule.  Furthermore, § 1920(4) allows

recovery for photocopying where "necessarily obtained for use in the case." Costs are taxable

under this provision "even if the documents are not offered into evidence at trial." *Hurley*, 1996

WL 549298, at *3; *see also Boyadjian v. CIGNA Cos.*, 994 F. Supp. 278, 280 (D.N.J. 1998);

*Sullivan v. Chrysler Motors Corp.*, No. 94-5016, 1997 WL 94236, at *6 (D.N.J. Feb. 28, 1997).

This Court concludes that these outside vendor costs for trial photocopying represent ordinary

litigation expenses reasonably incurred in the prosecution of this massive, complex litigation, and

were not merely for counsel's convenience. *See Ricoh*, 2007 WL 1852553, at *3; *Oh*, 225

F.R.D. at 154. This Court will not disturb the Clerk's award of **$28,270.22** for outside vendor

photocopying expenses, and will tax these costs in its discretion.


## VII.    Demonstratives

Plaintiff's Bill of Costs requested $41,891.64 for costs incurred in the preparation of

demonstratives and other illustrative materials. The Clerk granted these costs in full, stating that

the various means and services used to create the demonstratives "were necessarily obtained for

use in the case and assisted the jury in understanding the evidence and the case." Clerk's Op. at

15. PwC appeals, contending that fees for demonstratives are only taxable where the illustrative

material is admitted into evidence. As PwC correctly notes, this Court ultimately instructed the

jury that the demonstratives were not evidence, and only a small fraction of the demonstratives

for which Plaintiff seeks costs were available to the jury during their deliberations. Plaintiff

served over 250 demonstratives on PwC prior to trial, and many of these were not ultimately

used at trial.

Local Rule 54.1(g)(10) states, in relevant part:

> The reasonable expense of preparing visual aids including, but not limited to, maps, charts, photographs, motion pictures and kindred material, is taxable as costs when such visual aids are admitted into evidence. It is advisable to obtain a court order at a pretrial conference before incurring the expense of preparation of such visual aids.

While this Rule allows the Clerk to tax costs only for those demonstratives that are "admitted into evidence," this Court once again notes that Section 1920(4) authorizes this Court to grant costs for any "exemplification and copies of papers necessarily obtained for use in the case." Courts have interpreted this provision to include illustrative and demonstrative aids in many forms. *See, e.g.*, *Cefalu*, 211 F.3d at 428 ("So long as the means of presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification."). To the extent that the Local Rule conflicts with § 1920, the Local Rule "must give way," as this Court's ultimate authority to tax costs derives from § 1920. *In re Baby Food*, 166 F.3d at 139.

This Court concludes, based on its interpretation of § 1920 and in its discretion, that the demonstratives prepared by Plaintiff were reasonably necessary for use in this complex case, even though they were not admitted into evidence and not all of them were actually presented to the jury at trial, and even though they might have been prepared as part of a "trial-and-error" process. (PwC Reply Br. at 3.) As Plaintiff states, "[d]emonstrative preparation in advance was necessary, pursuant to the Final Pretrial Order, thus requiring the parties to anticipate what might be used." (Pl.'s Opp. Br. at 9.) These costs to prepare demonstratives represent ordinary litigation expenses reasonably incurred in the prosecution of this massive, complex litigation, and were not merely for counsel's convenience. *See Ricoh*, 2007 WL 1852553, at *3; *Oh*, 225 F.R.D. at 154. Plaintiff need not have specifically identified its costs for each demonstrative or

29

explained how precisely each demonstrative was used.  Plaintiff submitted appropriate documentation in the form of billing records, and this Court accepts Plaintiff's general representation as to the use it made of these demonstratives and the various services employed to produce them.

Finally, PwC again contends that Plaintiff's failure to seek a pretrial order regarding the taxation of these costs somehow defeats their entitlement to these costs.  Again, while such a course is preferable, and indeed explicitly advised by Local Rule 54.1(g)(10), failure to follow this approach does not defeat the taxability of these costs under § 1920.

This Court will uphold the Clerk's award of **$41,891.64** for demonstrative preparation, and will tax these costs in its discretion.


## VIII.   Special Master Fees

Plaintiff objects to the Clerk's refusal to tax PwC for Plaintiff's share of the fees paid to the Special Master in this case.  In 2003, this Court appointed the Honorable John M. Boyle, former Superior Court Judge, as Special Master in this case.  Judge Boyle provided commendable service to the parties and this Court in supervising discovery and case management and resolving disputes regarding discovery and other issues.  In its Order appointing Judge Boyle as Special Master, this Court stated that Judge Boyle would be paid at his normal hourly rate. This Court specifically ordered that "Plaintiff shall be responsible for paying one-half of the Master's fees and expenses; defendants shall be responsible for paying the other one-half."  (Doc. No. 167, Order Appointing Special Master, entered May 9, 2003, at ¶ 4.)  No party asked the Court to rule prior to trial whether its share of the Special Master's fees would be recoverable

post-trial as the costs of a prevailing party.  Plaintiff's Bill of Costs seeks recovery of $18,207.70

for its share of the fees paid to the Special Master.  The Clerk denied taxation of these costs

because the Court ordered the parties to share costs, Plaintiff did not seek a ruling on whether its

share would be recoverable post-trial, and special master fees "are not among the categories of

costs listed in 28 U.S.C. § 1920."  Clerk's Op. at 16.

Section 1920 indeed does not specifically list special master fees as recoverable, and

Local Rule 54.1 provides no guidance on the issue.  However, several courts have held that

special master fees are recoverable costs by the prevailing party, and that determination of

whether to tax such costs lies within the court's discretion.  *See, e.g.*, *Roy v. Cty. of Lexington,*

*S.C.*, 141 F.3d 533, 549 (4th Cir. 1998); *Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir.

1996); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 545-46 (9th Cir.

1987); *Bradley Group, Inc. v. Ohio State Life Ins. Co.*, No. 91-5719, 1997 WL 22661, at *1

(E.D. Pa. Jan. 17, 1997); *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.*, 143 F.R.D.

292, 296 (N.D. Ga. 1991).

The Court's authority to tax costs for special master fees to the prevailing party also

derives from Federal Rule of Civil Procedure 53, which governs the appointment of special

masters.  *Aird*, 86 F.3d at 221 ("Rule 53 vests the district court with authority to allocate master's

fees in favor of the prevailing party.").  Rule 53(g)(3) provides that the court must allocate

payment "among the parties after considering the nature and amount of the controversy, the

parties' means, and the extent to which any party is more responsible than other parties for the

reference to a master."  The Rule further provides that "[a]n interim allocation may be amended

to reflect a decision on the merits."  Fed. R. Civ. P. 53(g)(3).  This Court concludes that special

31

master fees may be taxed as costs in the court's discretion.  *See Aird*, 86 F.3d at 221 ("*Crawford Fitting* makes clear not only that costs not enumerated in § 1920 may be taxed if there is a contractual or an express statutory source of authority to do so, but also leaves Rule 53(a) unscathed.") (citations omitted); *Bradley Group*, 1997 WL 22661, at *1 ("The district court has the authority to fix the compensation of a special master pursuant to F.R.C.P. 53(a).  The court also has the broad discretion to tax a Special Master's fee on behalf of a prevailing party under F.R.C.P. 54(d).").

This Court's Order appointing Judge Boyle as Special Master represents the "interim allocation" referenced by the Rule.  Based on the factors enumerated in Rule 53(g)(3), this Court determined that the Receiver and PwC would share the payment of the special master's invoices equally at that time.  In its discretion, this Court has the authority to amend that allocation to reflect that the Receiver prevailed in this case and, as such, should recover its special master costs.  *See Bradley Group*, 1997 WL 22661, at *1.[8]  However, in the exercise of its discretion, this Court declines to do so.  This Court explicitly ruled prior to trial that the special master costs would be shared by the parties for purposes of paying the Special Master's invoices.  While this Order does not preclude recovery by Plaintiff at this juncture, the Court concludes that because the Special Master assisted both parties equally and provided a service to the Court as well, both

---

[8]Contrary to PwC's suggestion, this Court need not have intimated in its Order appointing Judge Boyle that the apportionment would be "re-visited."  (PwC's Br. Opp. at 17.)  Rule 53 explicitly authorizes the Court to "revisit" the issue, no matter whether the Court indicated that future reconsideration was likely or whether the parties agreed to such a potential circumstance.  As PwC stresses, the district court in *Bradley Group* noted that it previously stated to the parties that it would consider reallocating costs as the case proceeded.  1997 WL 22661, at *1.  However, that court did not condition its ultimate taxation of special master fees against the non-prevailing party on this prior statement.

parties should share in this litigation cost.  In its discretion, this Court declines to amend its

initial allocation of the Special Master's fees, and will not tax PwC for Plaintiff's share of those

fees.


**IX.     Summary**

In accordance with the above rulings, this Court will tax costs in favor of Plaintiff and

against PwC and the Estate of Chait in the following amounts.

| | |
|---|---|
| Docket Fee | $60.00 |
| Daily Transcript Fee | $53,937.50 |
| Deposition Transcripts | $194,347.72 |
| Courtroom Equipment | $55,100.00 |
| Playback of Videotaped Depositions | $16,177.50 |
| Witness Fees | $15,048.66 |
| Photocopying Trial Exhibits | $28,270.22 |
| Demonstrative Exhibits | $41,891.64 |
| Total Taxable Costs | **$404,833.24** |

This Court therefore will add costs of $151,788.25 to the Clerk's Award of $253,044.99.

Of the $499,479.11 requested by Plaintiff in its appeal, this Court will decline to tax costs in the

amount of $94,645.87.

***Conclusion and Order***

For the foregoing reasons, Plaintiff's and PwC's motions (Doc. Nos. 487, 488) to review

the Order of the Clerk on Plaintiff's Bill of Costs and Disbursements are hereby GRANTED IN

PART and DENIED IN PART.  This Court hereby MODIFIES the Clerk's award.  This Court

hereby TAXES COSTS in favor of Plaintiff and against Defendants PwC and the Estate of

Arnold Chait in the total amount of **$404,833.24**.

PwC's motion to stay taxation of costs (Doc. No. 488) is DENIED AS MOOT.



Dated: January 5, 2009
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.